# In the United States Court of Federal Claims

TONGZHONG JU and YANXIA LI,

                  *Plaintiffs*,

    v.

THE UNITED STATES,

                  *Defendant*.

No. 22-1815 T

(Filed: March 18, 2024)

Neil H. Koslowe, Potomac Law Group, PLLC, Washington, DC, for plaintiff.

Elizabeth B. Villarreal, Tax Division, United States Department of Justice, Washington, DC, for defendant.

**OPINION AND ORDER**

**Granting in part and denying in part Dr. Ju's motion for summary judgment and granting in part and denying in part the government's cross-motion for summary judgment**

**SILFEN,** *Judge*.

      In 2015 and 2016, Tongzhong Ju and his wife, Yanxia Li (collectively, for purposes of this opinion, "Dr. Ju") paid taxes on both proceeds from the sale of stock and a cash payment Dr. Ju received from the University of Oklahoma, where he previously worked. Dr. Ju now requests a partial refund of those taxes. He argues that (1) the stock that he sold should be eligible for treatment as qualified small business stock under 26 U.S.C. § 1202; (2) the cash payment was in exchange for a transfer of patent rights—as opposed to another type of payment from the university—and therefore qualifies for capital gain treatment under 26 U.S.C. § 1235(a); (3) he qualifies for additional deductions in 2016; and (4) he should recover attorney's fees and costs because of the Internal Revenue Service's (IRS's) unreasonable delays.

      Dr. Ju moved for summary judgment on these issues before conducting discovery. The government cross-moved for partial summary judgment. On the first issue—the sale of the stock—a large portion of Dr. Ju's stock is not eligible for treatment as qualified small business stock because it was transferred to Dr. Ju within five years of when he sold it, but 18,017 shares might be eligible, depending on the earlier holdings and income of the business and depending on whether Dr. Ju can prove that he received the stock more than five years before the sale, two facts that neither party has proven. The court thus grants the government summary judgment on the majority of the shares and denies summary judgment to both parties on 18,017 shares. On the second issue—the cash payment—the court denies summary judgment to both parties because

1

there is a genuine dispute over whether the cash payment at issue was a royalty in exchange for a transfer of patent rights licensed to Selexys or for another transaction related to another company called Tetherex. On the third issue—miscellaneous other deductions—the government does not contest most of Dr. Ju's additional 2016 deductions. Dr. Ju, in his reply, no longer argues for the remaining deductions for 2016. So the court grants Dr. Ju's motion for summary judgment as to $25,175 in deductions for 2016, and the court grant's the government's motion for summary judgment as to an additional $100 in requested deductions for 2016. Finally, on the fourth issue—attorney's fees—because the case is not over, the court will not yet address Dr. Ju's request for attorney's fees and costs. The court will deny that request without prejudice to Dr. Ju reraising it after final disposition of this case. Thus, this court **grants in part** and **denies in part** Dr. Ju's motion for summary judgment and **grants in part** and **denies in part** the government's cross motion for summary judgment.

I.   Background

Dr. Ju, a former employee of the University of Oklahoma, is, as relevant to this case, a named inventor on two patents. ECF No. 9-4, 9-5. The university's policy is that all patents on inventions that were made or conceived by university employees are the property of the university and that employees must assign their rights in those patents to the university. ECF No. 9-3. Dr. Ju assigned his rights in both patents to the university before November 2003. ECF No. 9-4, 9-5, 9-6. In November 2003, the university licensed those two patents to Selexys Pharmaceuticals Corporation in return for cash and shares of Selexys stock. ECF No. 9-7 at 8.[1]

The university licensing policy states that the university will give an inventor 35 percent of the gross revenues, including equity, that it receives under a patent license. ECF No. 9-3 at 4. While the university will give the inventor cash revenue when the university receives it, stock issued to the university "shall be held by the Controller's Office" until the employee leaves the university. *Id.* at 4-5.

In 2015, Dr. Ju had a dispute with the university about the revenue from his patents, and he and the university entered into a settlement agreement. ECF No. 9-11. The agreement stated that Selexys had previously issued 583,921 shares of common stock to the university, and 18,017 shares to Dr. Ju. *Id.* at 1. Selexys was directed to "reissue 53,441 shares of common stock (constituting 11.666667% (1/3 of the inventor's share) of the License Shares, less 18,017 shares already issued in the name of Dr. Ju) in the name of Dr. Ju, rather than the University." *Id.* at 2. In addition to Selexys stock, the agreement included terms regarding the stock of another entity named Tetherex.[2] *Id*.

---

[1] In 2005, Selexis Corporation reincorporated as Selexys Pharmaceuticals Corporation. ECF No. 9 at 4. This opinion will use "Selexys" to refer to the current company and its predecessor.

[2] The relationship between Tetherex and Selexys is unclear, but Dr. Ju's counsel stated that the two might be the same company. Oral Argument at 37:06, *Ju v. United States* (Nov. 30, 2023) ("That was another company, which I think was another name that was used for Selexys. It was an associated company with Selexys … . I think it's just another iteration of the same corporate name.")

The settlement terms also included a payment of $33,500 from the university to Dr. Ju. ECF No. 9-11 at 1. Dr. Ju reported that payment as royalty income on his 2015 tax return. ECF No. 9-1 at 4 [¶18]. The next year, Dr. Ju sold his Selexys stock and reported the income on his tax return as a long-term capital gain. ECF No. 9-1 at 4 [¶¶19-20].

In 2019, Dr. Ju filed amended tax returns for 2015 and 2016. ECF No. 9-1 at 5 [¶22]. The amended 2015 tax return sought to treat the cash income from the university, which had been reported as royalties, as long-term capital gain income. ECF No. 4-1 at 2. The amended 2016 tax return sought to treat the proceeds from the sale of Selexys stock as "qualified small business stock," instead of long-term capital gains, which would entitle Dr. Ju to exclude part of those proceeds from his taxable income. ECF No. 4-2 at 2. The amended 2016 return also claimed additional itemized deductions. *Id*. at 1. The IRS disallowed both amended tax returns. ECF Nos. 9-18, 9-21.

Dr. Ju filed a complaint, and then an amended complaint, in this court, requesting a partial tax refund from his 2015 and 2016 taxes. ECF Nos. 1, 4.

## II.   Discussion

Dr. Ju moves for summary judgment, arguing that (1) the government owes him a refund for taxes he paid on the sale of qualified small business stock; (2) the government owes him a refund for taxes he paid on the $33,500 in cash from the university; (3) the government owes him a refund because he amended his 2016 tax return to include additional deductions; and (4) the court should award him attorney's fees and costs. *See* ECF No. 9. The government opposes and requests summary judgment in its favor on all issues, except that it agrees, on the third issue, that Dr. Ju is entitled to an additional $25,175 in itemized deductions for tax year 2016. ECF No. 12.

Summary judgment is appropriate when "the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." RCFC 56(a). Disputes over material facts preclude summary judgment. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). A fact is material if it could "affect the outcome of the suit under the governing law." *Id.* A dispute is genuine when "the evidence is such that a reasonable [trier of fact] could return a verdict for the nonmoving party." *Id.*

When deciding a motion for summary judgment, a court must "determine whether there is a genuine issue for trial." *Anderson*, 477 U.S. at 249. Summary judgment should be granted when the record "could not lead a rational trier of fact to find for the nonmoving party." *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 599 (1986) (quotation marks omitted). "When both parties move for summary judgment, grant of the motion in favor of one party must satisfy this rule concerning factual inferences; cross-motions do not change the requirement that all justifiable inferences must be drawn in favor of the losing party." *Murphy Expl. & Prod. Co. v. Oryx Energy Co.*, 101 F.3d 670, 673 (Fed. Cir. 1996).

This court has jurisdiction over tax refund suits, namely, "[a]ny civil action against the United States for the recovery of any internal revenue tax alleged to have been erroneously or illegally assessed or collected, or any penalty claimed to have been collected without authority or any sum alleged to have been excessive or in any manner wrongfully collected under the internal

revenue laws." 28 U.S.C. 1346(a)(1); *see also United States v. Clintwood Elkhorn Min. Co.*, 553 U.S. 1, 4 (2008).

In a refund suit, "the burden of proof is on the taxpayer to show that the Commissioner's determination is invalid." *Helvering v. Taylor*, 293 U.S. 507, 515 (1935). "A tax refund suit is a *de novo* proceeding, in which the plaintiff bears the burden of proof, including both the burden of going forward and the burden of persuasion." *Sara Lee Corp. v. United States*, 29 Fed. Cl. 330, 334 (1993) (citing *Taylor*, 293 U.S. at 515). "[T]he taxpayer must come forward with enough evidence to support a finding contrary to the Commissioner's determination." *Danville Plywood Corp. v. United States,* 899 F.2d 3, 7 (Fed. Cir. 1990).

### A. Dr. Ju has not shown that he can exclude half the proceeds of the stock sales from his 2016 gross income under 26 U.S.C. § 1202; there is a genuine issue as to some of the income from the stock sales

Under 26 U.S.C. § 1202, taxpayers can exclude half the gain from the sale or exchange of qualified small business stock. This exclusion is allowed (1) if the taxpayer acquired the stock at original issue (26 U.S.C. § 1202(c)(1)(B)) and held it for more than five years (*id.* § 1202(a)(1)) and (2) if the small business meets the statutory definition of a "qualified small business" (*id.* § 1202(d)(1)).

#### 1. For most of Dr. Ju's stock, he did not acquire it when it was originally issued or own it for at least five years before selling it

To warrant the tax deduction for his sale of Selexys stock in 2016, Dr. Ju would have to have acquired the stock when it was originally issued in 2003.[3] "Qualified small business stock" must be issued by a qualified small business and be acquired by the taxpayer at its original issue "in exchange for money or other property" or "as compensation for services provided" to the business. 26 U.S.C. § 1202(c)(1). Original issue is the "first issue of securities of a particular type or series." *Holmes v. Comm'r*, 140 T.C.M. (CCH) 250 at 7 (2012), *aff'd* 593 F. App'x 693 (9th Cir. 2015) (citing Black's Law Dictionary 908 (9th ed. 2009)).

Dr. Ju would also have to have held the stock from that original issue date until the sale, a period that must be at least five years. "In the case of a taxpayer other than a corporation, gross income shall not include 50 percent of any gain from the sale or exchange of qualified small business stock held for more than 5 years." 26 U.S.C. § 1202(a)(1).

The government argues, and Dr. Ju does not dispute, that Dr. Ju did not receive most of his shares of Selexys stock until 2015, when the university gave them to him. Dr. Ju provides two stock certificates for Selexys stock—one for 53,441 shares and the second for 18,017 shares—both issued in 2015. ECF No. 9-12. Dr. Ju alleges that the 18,017 shares were issued to him at the

---

[3] The parties' briefs do not dispute that 2003 qualifies as the date of "original issue" under the statute. Both parties stated at oral argument that they believe that 2003 is the date of original issue, rather than 2005, when Selexis reincorporated as Selexys. The court accepts the parties' agreement, and regardless, it would not matter for purposes of these motions whether the correct date is 2003 or 2005.

outset, in 2003. Dr. Ju states in his declaration that the university "received and held 612,500 'License Shares' of Selexys stock pursuant to the 2003 license agreement ... . 71,458 of those License Shares ... belonged to me and should have been issued in my name, but only 18,017 of those License Shares were issued in my name." ECF No. 9-1 at 4 [¶17]. Dr. Ju sold all of his shares in 2016, a year after the stock certificates were issued. ECF No. 9-1 at 4 [¶19]. Thus, for 53,441 shares of Selexys stock, Dr. Ju neither obtained the shares at their original issue nor owned them for the required five years, and he is not entitled to favorable tax treatment for them.

Dr. Ju essentially concedes as much in his reply brief, arguing only that "Tongzhong Ju held at least 14,017 [*sic*, 18,017 [4]] shares of Selexys stock for the five-year period required for IRC § 1202 treatment." ECF No. 15 at 1-2.

Neither Dr. Ju's settlement agreement with the university nor the university's policy changes the timing of when Dr. Ju received the 53,441 shares, which was too late for qualified small business treatment. Dr. Ju cites the 2015 settlement agreement's reference to the stock "acquired by Plaintiff Ju under the 2003 license agreement." ECF No. 9 at 10 & n.54. But the settlement agreement does not state that Dr. Ju acquired the stock in 2003; it states only that he acquired the stock *under* the 2003 agreement. Further, the text of the settlement agreement acknowledges that Dr. Ju had not received those shares of stock until the agreement was signed in 2015. The settlement agreement directs Selexys "to reissue 53,441 shares of common stock … in the name of Dr. Ju, rather than the University as they are currently issued." ECF No. 9-11 at 2. The settlement agreement thus acknowledges a transfer of stock to Dr. Ju and does not support Dr. Ju's theory that he received the 53,441 shares in 2003.

Dr. Ju also argues that, under the policy outlined in the university handbook, which requires the university to give him 35 percent of the licensing revenue from his patents, he held all of the shares of Selexys stock as "a matter of law" since the licensing agreement in 2003. *See* ECF No. 9 at 10-11. Dr. Ju cites *Franco v. State ex rel. Board of Regents of Univ. of Okla*, 482 P.3d 1, 9-10 (Okla. Civ. App. 2020), arguing that his ownership of the shares "is a matter of law under [the university's] Patent Policy incorporated in its Faculty Handbook, which is a binding contract." ECF No. 9 at 10-11. The government argues that the issuance of the stock certificates in the university's name, not the university's obligation to Dr. Ju under the handbook, controls. *See* ECF No. 12 at 10-11 (citing *Litman v. United States*, 78 Fed. Cl. 90, 133 (2007)); *see also* ECF No. 12 at 9-10 (citing *Natkunanathan v. Comm'r,* 99 T.C.M. (CCH) 1071 at 3, *aff'd*, 479 F. App'x 775 (9th Cir. 2012) (holding "that the term 'stock' in section 1202" does not include "options to acquire stock" for purposes of the five-year requirement of 26 U.S.C. § 1202(a)(1))).

While the court in *Franco* held that the University of Oklahoma's faculty handbook is a binding contract, it never addressed whether the existence of a contract means that the university is deemed to have performed its obligations under it at a specific time. *See generally Franco* 482 P.3d 1.

Dr. Ju's counsel relied on three new cases at oral argument to argue that Dr. Ju had effectively held the Selexys stock since 2003, instead of holding it since the formal issuance in his name

---

[4] *See* Oral Argument at 17:48 (Nov. 30, 2023) (discussing the number 14,017 and stating, "That's a typo, Your Honor.").

in 2015. Oral Argument at 18:40 (Nov. 30, 2023) (citing *Cates v. Commissioner*, 716 F.2d 1387 (1983); *Boykin v. Commissioner*, 344 F.2d 889 (1965); *Merrill v. Commissioner*, 40 T.C. 66 *aff'd per curiam* 336 F.2d 771 (9th Cir. 1964)). Those cases do not help.

In *Merrill*, the Ninth Circuit held that determining who "holds" real property requires looking at "the intent of the parties as to when the benefits and burdens of ownership of the property are to be transferred" rather than "passage of bare legal title." 40 T.C. at 74. The court looked at factors such as the use of the property and payments for repairs, taxes, and insurance premiums to determine who had taken on the benefits and burdens of ownership. *Id*. at 75. The court in *Boykin* examined similar factors, including physical possession of real estate and payment of interest from the contested date. 344 F.2d at 894. And the court in *Cates* did not analyze any of the factors, finding only that the plaintiff in that case did not meet the factors. 716 F.2d at 1390. Other than tax payments, those factors do not apply here because no one has argued that there were any repairs or insurance premiums for the shares of stock between 2003 and 2015. And Dr. Ju has not alleged that he made any tax payments on those shares before 2015. The tax payment for the sale of Selexys stock was due only after the 2015 issuance of stock in Dr. Ju's name. In other words, neither Dr. Ju nor the university was acting as if Dr. Ju owned those shares between 2003 and 2015. Dr. Ju has not shown that he, rather than the university, took on the benefits and burdens of stock ownership.

Dr. Ju does not otherwise support his argument that he held Selexys stock as a matter of law. At most, Dr. Ju could argue (and presumably did, in the events that led to the settlement agreement, *see generally* ECF No. 9-11 at 3-4) that the university owed him the stock shares under its contractual obligations as outlined in the university handbook. The transfer of those shares still took place in 2015.

Furthermore, under the settlement agreement, Dr. Ju acknowledged that his receiving stock shares and cash might have tax implications, and he would shoulder those burdens. ECF No. 9-11 at 5 ("Dr. Ju warrants he is solely responsible for and will pay any federal, state, and local taxes and any interest and/or penalties that are attributed to him, which may be owed by virtue of the receipt of the consideration herein provided or the issuance or reissuance of any shares of stock as contemplated herein."). Thus, not only did the settlement agreement lead to the university and Selexys transferring the 53,441 shares of stock in 2015, but Dr. Ju acknowledged his responsibility for any negative tax implications of that transfer.

Both the settlement agreement and the stock certificate indicate that the 53,441 shares of stock were issued to Dr. Ju in 2015, not at the time of original issuance. Dr. Ju then sold those shares in 2016, less than five years later. Thus, the government is correct that Dr. Ju is not entitled to favorable tax treatment for the 53,441 shares.

The settlement agreement references "18,017 shares already issued in the name of Dr. Ju," but Dr. Ju has not provided an original stock certificate from 2003. ECF No. 9-11 at 2. Thus, there is a genuine dispute regarding whether the 18,017 shares were held by Dr. Ju since original issuance.

### 2. There is a genuine dispute over whether Selexys was a qualified small business before 2009

Dr. Ju has failed to prove that Selexys was a qualified small business from 2003 to 2009. He must do that to show that the remaining 18,017 shares are eligible for favorable capital-gain tax treatment under § 1202. Dr. Ju provided financial records for Selexys from 2009 to 2011 and argues that they show that Selexys was a qualified small business in those years and, by extension, imply that Selexys would have been a qualified small business in other years. *See* ECF No. 9-10. Dr. Ju maintains that those are "the only financial records available." ECF No. 9 at 10 & n.53.

For a business to be a "qualified small business" under the Internal Revenue Code, among other things, the business must show that

> (A) the aggregate gross assets of such corporation (or any predecessor thereof) at all times on or after the date of the enactment of the Revenue Reconciliation Act of 1993 and before the issuance did not exceed $50,000,000,
>
> (B) the aggregate gross assets of such corporation immediately after the issuance (determined by taking into account amounts received in the issuance) do not exceed $50,000,000, and
>
> (C) such corporation agrees to submit such reports to the Secretary and to shareholders as the Secretary may require to carry out the purposes of this section.

26 U.S.C. § 1202(d)(1). Thus, for Dr. Ju's shares to qualify for favorable tax treatment, Selexys must have, before and immediately after November 2003, had less than $50 million in gross assets.

Generally, the burden of proof is on the taxpayer in tax refund cases. *Okerlund v. United States*, 53 Fed. Cl. 341, 356 (2002), *aff'd*, 365 F.3d 1044 (Fed. Cir. 2004) (citing *Welch v. Helvering*, 290 U.S. 111, 115 (1933)). "As a threshold matter, [a] plaintiff has the burden of proving that a section of the Internal Revenue Code applies to him, before he is able to benefit from its provisions." *Free-Pacheco v. United States*, 117 Fed. Cl. 228, 292 (2014). The burden shifts to the IRS if the "taxpayer introduces credible evidence with respect to any factual issue relevant to ascertaining the liability of the taxpayer for any tax." 26 U.S.C. § 7491(a)(1). Credible evidence is "the quality of evidence, which after critical analysis, the court would find sufficient upon which to base a decision on the issue if no contrary evidence were submitted." *Free-Pacheco*, 117 Fed. Cl. at 292 (quotation omitted). This burden shifts only if "(A) the taxpayer has complied with the requirements under this title to substantiate any item and (B) the taxpayer has maintained all records required under this title and has cooperated with reasonable requests by the Secretary for witnesses, information, documents, meetings, and interviews." 26 U.S.C. § 7491(a)(2).

Dr. Ju states that "the only financial records available show that [Selexys's] aggregate gross assets during the period 2009-2011 were $2.15 million." ECF No. 9 at 10. Dr. Ju argues that those statements are "credible evidence … that Selexys'[s] aggregate gross assets never came close to the $50 million maximum allowed." ECF No 9 at 10 n.53. Dr. Ju argues that the government must prove that Selexys's gross assets reached the maximum monetary amount at any other time. *See* ECF No. 9 at 10; ECF No. 15 at 2.

The government argues that the financial records from 2009 to 2011 are not "credible evidence" of Selexys's aggregate gross assets six years earlier. ECF No. 16 at 2-3. The government points out that the records are from "immediately after the 2008 Financial Crisis," when the gross assets of the business could have been negatively affected by the crisis. *Id*. at 3. Because Dr. Ju has not proven, through credible evidence, that Selexys was a qualified small business at its founding, the government argues, the burden to show otherwise has not shifted to the IRS under § 7491(a)(2). *Id*.

Neither party is entitled to summary judgment on this issue. Dr. Ju still has the burden of proof. He has not yet met that burden for the 18,017 shares that remain at issue. Dr. Ju provided proof of Selexys's aggregate gross assets only from 2009 to 2011, not close to the 2003 stock issuance. Dr. Ju relies on the likelihood that Selexys's gross assets would not have been that different from their 2009-to-2011 value of $2.15 million. But without any earlier records, Dr. Ju is not entitled to summary judgment that the gross assets of Selexys were less than the maximum allowed under the definition of a qualified small business.

The government argues that Dr. Ju cannot show Selexys's assets for 2003 were under $50 million because he would have already provided that evidence if he could have, and he admitted that he does not have any better evidence. ECF No. 12 at 13 (citing ECF No. 9 at 11 n.57). Dr. Ju's lack of sufficient evidence right now does not require granting summary judgment for the government. Instead, it requires denying summary judgment to both parties. With "cross-motions for summary judgment, the court must evaluate each motion on its own merits, taking care in each instance to view the evidence in favor of the non-moving party." *Almanza v. United States*, 935 F.3d 1332, 1337 (Fed. Cir. 2019). This court is not required to make findings of fact and should draw all reasonable inferences in favor of non-movant when examining each motion for summary judgment. *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 250, 255 (1986). "The inquiry performed is the threshold inquiry of determining whether there is the need for a trial—whether, in other words, there are any genuine factual issues that properly can be resolved only by a finder of fact because they may reasonably be resolved in favor of either party." *Id*. at 250.

Because there is a genuine dispute over when Dr. Ju was issued the 18,017 shares of Selexys stock, and whether Selexys was a qualified small business before and immediately after 2003, neither party is entitled to summary judgment on those shares.

### B. There is a genuine dispute over the reason for the $33,500 payment from the university

As part of the 2015 settlement agreement, Dr. Ju was paid $33,500 "within forty-five (45) days of (1) Selexys completing the stock issuance … and Tetherex Pharmaceuticals Corporation … completing the stock issuance … or, in the alternative, (2) Dr. Ju executing a written waiver." ECF No. 9-11 at 1. Dr. Ju argues that the university paid him that money in exchange for patent rights, and thus he should be able to treat it as a long-term capital gain under 26 U.S.C. § 1235(a). ECF No. 9 at 11-12. The government argues that the payment was "for something else" besides patent rights and thus is not eligible for capital-gain treatment. ECF No. 12 at 14.

Under 26 U.S.C. § 1235(a), a "transfer … of property consisting of all substantial rights to a patent … by any holder shall be considered the sale or exchange of a capital asset held for more

8

than 1 year." This applies "regardless of whether or not payments in consideration of such transfer are (1) payable periodically over a period generally coterminous with the transferee's use of the patent, or (2) contingent on the productivity, use, or disposition of the property transferred." *Id*.

"[T]he Tax Code generally treats the proceeds from the sale of a capital asset more favorably, as capital gains" while treating "income derived from a capital asset as ordinary income." *Cooper v. Comm'r of Internal Revenue*, 877 F.3d 1086, 1090 (9th Cir. 2017). The proceeds from the sale of a patent are treated as capital gains. *Id*. at 1091.

"[T]o determine the Federal tax character of a settlement payment, courts must determine in lieu of what were the damages awarded." *Colorcon, Inc. v. United States*, 110 Fed. Cl. 650, 662 (2013) (citation omitted); *see also Francisco v. United States*, 267 F.3d 303, 319 (3d Cir. 2001) ("It is a tenet of federal law that income received in settlement of a claim should be taxed in the same manner as if it had been received in court."). That inquiry focuses on the origin and characteristics of the claims that are settled. *Colorcon*, 110 Fed. Cl. at 662 (citing *Green v. Comm'r of Internal Revenue*, 507 F.3d 857 (5th Cir. 2007)). When the language of the agreement itself does not specify the origin of the claims, the court may look "beyond the agreement to other evidence that may shed light on the intent of the payor as to the purpose." *Green*, 507 F.3d at 867 (internal citation omitted). The inquiry is fact specific. *See id.* at 868. "[T]he nature of underlying claims cannot be determined from a general release that is broad and inclusive." *Ahmed v. Comm'r*, 102 T.C.M. (CCH) 607 at *3 (T.C. 2011), *aff'd* 498 F. App'x 919 (11th Cir. 2012).

If a settlement payment "was made to resolve a claim which arose in the process of acquisition of a capital asset or to extinguish a claim involving ownership rights to a capital asset, regardless of the taxpayer's subjective motivation for agreeing to make the payment, it constitutes a capital expenditure." *Entwicklungs und Finanzierungs A. G. v. Comm'r of Internal Revenue*, 68 T.C. 749, 759-60 (T.C. 1977). When there are multiple claims with different origins, the individual claims may be analyzed separately, and settlement amounts may be allocated to each. *See, e.g., Parker v. United States*, 215 Ct. Cl. 773, 787-789 (1978), *cert. denied*, 439 U.S. 1046 (1978).

Dr. Ju asserts that, because the university paid him in 2015 for "completing the stock issuance" by Selexys to the university, and because the amount equals the amount the university owed him under the university's licensing policy for the sale of his two patents, it was "effectively a sale to Selexys by Plaintiff Ju, the holder of substantial rights to a patent, of that capital asset." ECF No. 9 at 12 (quotation marks omitted). Dr. Ju also points to the form 1099 issued by the university, classifying the $33,500 as payment for "[r]oyalties" as evidence of "his surrender to the University of substantial rights to his patents." ECF No. 15 at 2.

The government argues that the $33,500 payment is not clearly tied to a transfer of patent rights to Selexys. ECF No. 12 at 14. The part of the agreement that references the payment mentions two companies—Selexys and Tetherex—and the payment could be tied to either company, but Dr. Ju licensed his patents only to Selexys. *Id*. According to the government, the university's characterization of the payment on its form 1099 as royalties is of limited relevance in determining whether the payment was legally a royalty payment. *See* ECF No. 16 at 4. And, the government argues, the sale of the patent rights concluded with the transfer of stock and was unrelated to the cash payment. ECF No. 12 at 14. Thus, the government argues that the payment "must have been

for [Dr.] Ju waiving his claims against the University, or for something related to the Tetherex dispute." *Id*.

Summary judgment is not appropriate when there is a genuine dispute as to a material fact. RCFC 56(a). Both parties agree that Dr. Ju entered into a settlement agreement with the university. They agree that the settlement agreement required the university to pay Dr. Ju $33,500. ECF No. 9-11 at 1 [¶1.A]. The parties disagree over why the university agreed to that amount, which controls the tax treatment. If it was a patent royalty, Dr. Ju should be entitled to favorable tax treatment. If it was for something else, he should not be entitled to favorable tax treatment.

The settlement agreement discusses "completing the stock issuance" of both Selexys and Tetherex stock. *Id*. Dr. Ju argues that the total payment is equal to the amount that the university owed him as a patent royalty for the Selexys license. Dr. Ju also submitted two letters. The first notes a distribution of $3,500 to Dr. Ju for royalties from an unspecified source in 2015 (ECF No. 15-2), and the second notes that the university received zero royalties from Selexys in 2016 (ECF No. 15-3). Neither letter shows that the university owed Dr. Ju $33,500 for royalties from Selexys, and neither clarifies the relationship between Selexys and Tetherex. The payment might relate to Selexys, to Tetherex, or to both companies; if it relates to both companies, it is unclear how the settlement amount should be allocated between the two and whether the Tetherex transaction was a patent-licensing transaction. The court does not have enough information about whether the payment is for the sale of Dr. Ju's patents to the university or for something else.

The government asserts that, no matter what, the payment covers something other than the patent royalties because Dr. Ju agreed to waive his claims against the university, which is valuable in itself. ECF No. 12 at 14. But settlement agreements often, if not always, include a waiver of claims. That is, in fact, the point of a settlement.

There is a genuine issue of material fact over whether the total payment equals the amount Dr. Ju was owed for the patent license. There is also a genuine issue of material fact over whether the cash payment covers Selexys, Tetherex, or both. Dr. Ju has not proven that the payment was all for the Selexys license, which is the only patent license Dr. Ju has shown he gave to the university. The government has not shown anything else that the payment is for. Thus, both parties' motions for summary judgment must be denied.

One other point warrants mentioning. Dr. Ju provided the settlement agreement as an attachment to his brief in this court, using it to support his arguments in this case. ECF No. 9-11. The government questioned in its opening brief whether the court could rely on the settlement agreement as evidence for certain purposes in this case. ECF No. 12 at 9. I will accept the settlement agreement as evidence to support both parties' positions.

The settlement agreement states that "neither this Agreement nor anything in this Agreement shall be construed to be or shall be admissible in any proceeding (civil, criminal, administrative, or otherwise) as evidence of an admission by the other Party." ECF No. 9-11 at 6. The settlement agreement does not make itself inadmissible in court for all purposes; it is only inadmissible as evidence of an admission by the university, which is not a party to this suit, or Dr. Ju in a suit against the university.

Here, both Dr. Ju and the government rely on the settlement agreement to support their positions. The government relies on it as evidence that the cash payment to Dr. Ju of $33,500 was in consideration for Dr. Ju's agreement to waive his claims against the university. ECF No. 16 at 4. I am skeptical of relying on a document, even partially in the government's favor, when the government itself argued for the inadmissibility of that document, but here, the alternative is worse, as both parties' arguments rest on the text of the settlement agreement. There is no document that would more clearly explain the relative positions of Dr. Ju and the university, so I will admit it as evidence. *See generally In re Buscone*, 61 F.4th 10, 25-26 (1st Cir. 2023) (noting that "declining to apply judicial estoppel might be reasonable in those instances where further factual development will better inform the ultimate decision, and where it is not immediately clear that estoppel would advance the doctrine's primary purpose of safeguarding the integrity of the courts").

### C. The parties agree on the 2016 itemized deductions

In his complaint and opening brief, Dr. Ju asserted a right to $25,275 in additional tax deductions for 2016. ECF No. 9 at 2. He submitted additional documentation to substantiate those tax deductions. *See* ECF Nos. 9-13, 9-14, 9-15, 9-16, 9-17. After reviewing the documents, the government stated that it "does not dispute that plaintiffs are entitled to $25,175 in additional itemized deductions for 2016." ECF No. 12 at 15-16. The government disputed a $100 requested charitable deduction where Dr. Ju made the donation in 2015, not 2016. *Id.* at 16. Both parties have now agreed to an additional $25,175 in deductions for 2016. ECF No. 15 at 3. The court accepts the parties' agreement on that.

### D. The court will wait to address Dr. Ju's claim for attorney's fees and costs

Dr. Ju, in his opening brief, requested that the court grant attorney's fees and costs under 26 U.S.C. § 7430. ECF No. 9 at 2. He alleged that the IRS "unreasonably delayed for more than three years its consideration of [his] refund claims." *Id.* (emphasis omitted). The government argues, among other things, that the IRS's position was reasonable because "plaintiffs' claims are materially different than what plaintiffs originally asked for on their amended returns." ECF No. 12 at 17. In his reply brief, Dr. Ju did not renew his request for attorney's fees. ECF No. 15 at 3 (requesting only a decision on his claims for favorable tax treatment of the shares of stock, the cash payment, and the additional itemized deductions for 2016). But Dr. Ju raised it at oral argument, and the court will address it for the sake of completeness.

A prevailing plaintiff in a court proceeding against the government in connection with a tax refund may be awarded reasonable litigation costs. 26 U.S.C. § 7430(a)(2). To be a prevailing party, the taxpayer must "substantially prevail" either "with respect to the amount in controversy," or "with respect to the most significant issue or set of issues presented." 26 U.S.C. § 7420(c)(4)(A)(i). Costs are not awarded if the position of the government in the proceeding was "substantially justified." 26 U.S.C. § 7420(c)(4)(B). In assessing whether the position of the government in a suit with multiple claims was justified, the court "determines whether, as a whole, the substantially justified positions outweigh the positions that were not substantially justified." *Adkins v. United States*, 154 Fed. Cl. 290, 302 (2021) (citing *Chiu v. United States*, 948 F.2d 711, 715 n.4 (Fed. Cir. 1991)).

11

Although Dr. Ju has prevailed on his claim for most of his deductions in 2016, the government's initial disallowance of those deductions, absent documentation to support them, was substantially justified. As detailed above, Dr. Ju has failed to show that the majority of stock shares at issue qualified for treatment under 26 U.S.C. § 1202. Neither party has prevailed on the status of 18,017 shares of Selexys stock. Neither party has shown whether the cash payment from the university is for the transfer of patent rights. Although skeptical that the status of those shares and the cash would tip the calculus in Dr. Ju's favor, the court will not decide the issue until after final disposition of all issues in the case. Therefore, at this time, Dr. Ju is not entitled to attorney's fees and costs, but the court will deny the request without prejudice to Dr. Ju reraising it after final disposition of the case.

E.     **The notice of additional authority**

The day before the oral argument on the parties' cross-motions for summary judgment, Dr. Ju filed a notice of additional authority. He submitted a two-page excerpt from an alleged purchase agreement of Selexys stock without a corresponding motion asking the court for leave to file. ECF No. 17, 17-1. Under the section titled "Qualified Small Business Stock," the excerpt states that "[a]s of and immediately following the Closing … the Company's aggregate gross assets, as defined by Code Section 1202(d)(2), at no time between its incorporation and through the Initial Closing have exceeded $50 million." ECF No. 17-1.

The government moves to exclude this notice. ECF No. 18. It contends that there is "no authority in" this court's rules "that would permit plaintiffs to file such a document without a motion for leave." *Id*. at 1. Because the submission is only two pages of a larger document which appears to be an unsigned, unexecuted draft, the government argues, the submission still does not properly substantiate Dr. Ju's claims. *Id*. at 2.

During oral arguments, Dr. Ju's counsel agreed that "the government properly objected, there was no motion, there was … no context in which this was submitted." Oral Argument at 2:25, *Ju v. United States* (Nov. 30, 2023).

The government has the better argument. The court need not decide whether the submission is admissible evidence; that can be addressed later, if necessary. The court's rules do not allow this type of submission without leave, and because Dr. Ju filed it after briefing was complete and the day before the oral argument, the government did not have a sufficient chance to respond. Thus, the government's motion to exclude for purposes of this set of summary judgment motions is granted, without prejudice to Dr. Ju's raising it later in the case.

## III.     Conclusion

For the reasons stated above, Dr. Ju's motion for summary judgment is **granted in part and denied in part**. The government's cross-motion for partial summary judgment is **granted in part and denied in part**. In summary,

> (1)     The court **denies** Dr. Ju's motion for summary judgment as to 53,441 shares of Selexys stock and **grants** the government's cross-motion for summary judgment as to the 53,441 shares of Selexys stock;

(2) The court **denies** Dr. Ju's motion for summary judgment as to 18,017 shares of Selexys stock and **denies** the government's cross-motion for summary judgment as to the 18,017 shares of Selexys stock; either side's motion may be reraised after discovery;

(3) The court **denies** Dr. Ju's motion for summary judgment to treat the $33,500 cash payment as long-term capital gain and **denies** the government's cross-motion for summary judgment on the $33,500 cash payment;

(4) The court **grants** Dr. Ju's motion for summary judgment that he is entitled to an additional $25,175 in itemized deductions for tax year 2016;

(5) The court **denies** Dr. Ju's motion for summary judgment that he is entitled to an additional deduction of $100 for tax year 2016 and **grants** the government's cross-motion for summary judgment that Dr. Ju is entitled to an additional deduction of $100 for tax year 2016;

(6) The court **denies without prejudice** Dr. Ju's request for attorney's fees and costs; and

(7) The court **grants** the government's motion to exclude Dr. Ju's notice of additional authority without prejudice to Dr. Ju's relying on it later in the case.

No later than 30 days after the date of this opinion, the **parties are directed to file a joint preliminary status report** with a proposed schedule for future proceedings, including discovery, in accordance with this court's rules.

**IT IS SO ORDERED.**

　　　　　　　　　　　　　　　　　　　　　　s/ Molly R. Silfen
　　　　　　　　　　　　　　　　　　　　　　MOLLY R. SILFEN
　　　　　　　　　　　　　　　　　　　　　　Judge